**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA**

**V.** **CRIMINAL NO. 3:23-CR-93-HTW-FKB**

**FELIX BROWN**

**PARTIAL MOTION TO DISMISS INDICTMENT**

Comes now Defendant Felix Brown and files this Partial Motion to Dismiss Indictment. Count Two of the Indictment charges Mr. Brown with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Mr. Brown contends that § 922(g)(1) is unconstitutional as applied to him, in light of the United States Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Fifth Circuit's guidance in *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023) and *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), and this Court's analysis in *United States v. Bullock*, Case No. 3:18-cr-165-CWR-FKB, 2023 WL 4232309 (S.D. Miss. June 28, 2023).

In support of this Motion, Mr. Brown presents the following argument:

**I. Factual background.**

Count Two of the Indictment charges Mr. Brown with violating 18 U.S.C. § 922(g)(1). Indictment, ECF No. 1. Section 922(g)(1) provides:

> It shall be unlawful for any person . . . (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Mr. Brown does have convictions for controlled substances, as well as a felon-in-possession conviction. All are non-violent, state law offenses.

## II. Legal Standards

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST., amend. II. The Supreme Court has held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

The Supreme Court's recent decision in *Bruen* set out "the standard for applying the Second Amendment":

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2129–30. In so holding, the Supreme Court rejected lower courts' use of means-end scrutiny in Second Amendment cases. *See id.* at 2125–27 & n.4 (abrogating *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012)). "To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen,* 142 S. Ct. at 2126. In other words, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

*Bruen* provides that when a court is required to analyze the "Nation's historic tradition of firearm regulation," two standards apply. *Bruen*, 142 S.Ct. at 2130-31. In some cases, the historical inquiry is "fairly straightforward." *Id.* at 2131. "For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the

challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S.Ct. at 2131 (emphasis added). Where a challenged regulation addresses "unprecedented societal concerns or dramatic technological changes," courts need only find a "relevantly similar" regulation to justify a restriction on Second Amendment rights. *Id.* at 2132. In evaluating whether a historical regulation is distinctly or relevantly similar to the modern regulation being challenged, courts should look to "two metrics," addressed in *Heller* and *McDonald*: "*how* and *why* the regulations burden" Second Amendment rights. *Bruen*, 142 S.Ct. at 2132-33 (emphasis added). Additionally, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *central* considerations when engaging in an analogical inquiry." *Id.* at 2133 (internal punctuation and citations omitted) (emphasis in original).

The historical tradition test, then, requires more than a broad declaration that relies on generalities. The Supreme Court, in *Bruen*, engaged in a detailed analysis of statutes and regulations, giving priority to those in existence at the time the Second Amendment was ratified. *See id.* at 2136. The Court did so because, "when it comes to interpreting the Constitution, not all history is created equal." *Id.* at 2136. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634-35. Accordingly, courts must "guard against giving postenactment history more weight than it can rightly bear." *Id.* Historical evidence from the late nineteenth century and the twentieth century "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S.Ct. at 2154 & n.28; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2267 (2022) (stating that "how the States regulated" when a constitutional Amendment was ratified is "the most important historical fact").

The Fifth Circuit has provided additional guidance for lower courts to utilize in analyzing the constitutionality of a statute under the *Bruen* framework. *Rahimi* holds that *Bruen* "'fundamentally change[d]' our analysis of laws that implicate the Second Amendment, [] rendering out prior precedent obsolete." *Rahimi*, 59 F.4th at 170. Courts in the Fifth Circuit, then, should follow *Rahimi*'s example of careful, in-depth analysis of potential historical analogues, giving greater weight to those analogues closest in time to the Second Amendment's ratification. *See id.* at 174-79. This analysis requires this Court to analyze both "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133 (quoted in *Rahimi*, 59 F.4th at 179).

The Fifth Circuit recently confirmed this approach to *Bruen* in *Daniels*, stating that courts must "hew closely to *Bruen*'s own reasoning and hold the government to its heavy burden." *Daniels*, 77 F.4th at 342. In *Daniels*, the Court explained that the Bruen historical analysis "requires both close attention to history and analogical reasoning. *Id.* To find a "tradition" of restricting Second Amendment rights, the government must present evidence of "well-accepted limits" that "share a common 'why' and 'how'" with the current restriction – "they must both address a comparable problem (the 'why') and place a comparable burden on the rightsholder (the 'how')." *Id.* In other words, "[w]hat matters is whether a conceptual fit exists between the old law and the new." *Id.*

This Court has also held that Bruen requires the Government to meet its burden with specific historical analogues. *See Bullock*, 2023 WL 4232309, *21-23. The Government may not rely on broad declarations related to "the ratifying conventions theory" or the proposition that some felonies were once punishable by death. *Bullock*, 2023 WL 4232309, *21-23.

## III. Argument

The Second Amendment's plain text covers the conduct proscribed by Section 922(g)(1), and the prosecution cannot meet its burden of establishing that this application of Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. Therefore, Section 922(g)(1) is unconstitutional as applied to Mr. Brown.

### A. The Second Amendment's plain text covers possession.

Applying *Bruen*'s standard, the Second Amendment's plain text covers the "possess[ion]" of a firearm that Section 922(g)(1) criminalizes. 18 U.S.C. § 922(g)(1). The term "'[k]eep arms' was simply a common way of referring to possessing arms." *Heller*, 554 U.S. at 583. Accordingly, Mr. Brown's possession of a firearm is presumptively protected.

### B. Mr. Brown is one of "the people" protected by the Second Amendment.

Mr. Brown is also one of "the people" protected under the Second Amendment's plain text. Both *Heller* and *Bruen* begin their analysis with the presumption that "the people" means all people under the protective umbrella of the Constitution. *See Heller*, 554 U.S. at 580-81; *Bruen*, 142 S.Ct. at 2126, 2156. *Heller* holds that when the Constitution references the rights of "'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580-81 This means that there is a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans" *Id.* Likewise, *Bruen* reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms. *Bruen*, 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581).

The Supreme Court has adopted this reasoning because the phrase "the people" is a term of art found in the First, Second, Fourth, Ninth, and Tenth Amendments to the Constitution that applies broadly. S*ee Heller*, 554 U.S. at 579-80; *see also* U.S. CONST., amend. I (using "the people"

in Assembly-and-Petition Clause); U.S. CONST., amend. IV (using "the people" in Search-and-Seizure Clause); amend. IX (providing that enumerated rights in the Constitution do not diminish "others retained by the people"); amend X (reserving all other powers not delegated to "the States respectively, or to the people.").

The Fifth Circuit has also adopted this reading of *Bruen* and *Heller*. *See Rahimi*, 59 F.4th at 171. As the Fifth Circuit explained in *Rahimi*, to limit "the people" protected by the Second Amendment's guarantee of the individual right to bear arms is to "turn[] the typical way of conceptualizing constitutional rights on its head" and would allow Congress to "remove 'unordinary' or 'irresponsible' or ' non-law abiding people' – however expediently defined – from the scope of the Second Amendment." *Id.* at *4. Being law-abiding is not a prerequisite to claiming the protection of the Second Amendment. To find that the Second Amendment applies only to "law-abiding citizens" would set it apart from the other individual rights set forth in the Bill of Rights and relegate it to the "second-class" status that the Supreme Court decried as unconstitutional. *Bruen*, 142 S.Ct. at 2156 (citing *McDonald*, 561 U.S. at 780 (plurality opinion)).

This Court has held that felons are also included among the people. *See Bullock*, 2023 WL 4232309, *20-21. Accordingly, despite his convictions, Mr. Brown is presumptively entitled to protection under the Second Amendment.

**C. As applied to Mr. Brown, § 922(g)(1) violates the Second Amendment.**

In this case, the distinctly similar standard applies. Section 922(g)(1) broadly addresses a general societal concern that has persisted since the eighteenth century: how society treats those members who violate the law, including whether those members retain their constitutional right to keep and bear arms. However, whether the court opts to utilize the "distinctly similar" or "relevantly similar" standard, § 922(g)(1) is unconstitutional as applied to Mr. Brown. The

government cannot meet its burden because the nation's historical tradition of regulating firearms, even against felons, is incompatible with the total and permanent ban imposed by § 922(g)(1). There simply is no historical tradition of permanently stripping felons of their Second Amendment rights.

### 1. *Heller*'s dictum does not decide the question.

*Bruen*'s holding must prevail over *Heller*'s *dictum*. *See Bullock*, 2023 WL 4232309, *17-19. The Supreme Court in *Heller* did "not undertake an exhaustive historical analysis" when it stated—in *dictum*, and without citation—that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which the Court described in a footnote as "presumptively lawful." *Heller*, 554 U.S. at 626–27 & n.26;[1] *see McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010) (plurality) (same); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting same). The Fifth Circuit has described this language as "[d]icta in *Heller*." *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *accord, e.g.*, *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 686–87 (6th Cir. 2016) (en banc); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010).

*Bruen* "did not attempt to bolster [the] reasoning"—or lack of it—underlying *Heller*'s *dictum*. *See Dobbs*, 142 S. Ct. at 2271. Instead, *Bruen* now holds that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively *protects* that conduct," and the government bears the burden to demonstrate that the Second Amendment regulation rests on the nation's historical tradition. 142 S. Ct. at 2126 (emphasis added). *Bruen*'s

[1] The parties in *Heller* did not brief the historical background for *Heller*'s "presumptively lawful" measures. The respondent sought to justify those measures by arguing they would satisfy means-end scrutiny—a justification that *Bruen* now forecloses. *See* Respondent's Br. at 57, *Dist. of Columbia v. Heller*, No. 07-290 (Feb. 4, 2008); *Bruen*, 142 S. Ct. 2125–27.

holding must prevail over *Heller*'s *dictum*. *See Heller*, 554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued."). So too must *Bruen*'s holding prevail over the Fifth Circuit's earlier analysis of Section 922(g)(1).

**2. There is no historical tradition of permanently depriving people with felony convictions from exercising their Second Amendment rights.**

Numerous scholars have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." C. Larson, Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1374-79 (2009); C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century).

Then-Judge Barrett and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451, 453-64 (7th Cir. 2019) (Barrett, J., dissenting) (surveying history; *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century."); *Folajtar v. Att'y Gen. of U.S.*, 980 F.3d 897, 914 (3d Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of disarming felons is open. Precedent does not settle its historical limits. Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and nondangerous alike, equally excluded from the Second Amendment? No, they were not."); *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have *not* found evidence of longstanding dispossession laws.").

And the government has agreed. Section 922(g)(1), the government has said in pre-*Bruen* briefing, "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." U.S. Br. at *27–28, *United States v. Pettengill*, No. 10-2024, 2011 WL 1977759 (1st Cir. May 13, 2011) (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)). The government's briefing has stated numerous times: "As for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms." *E.g.*, U.S. Br. at *25, *United States v. Staten*, No. 10-5318, 2011 WL 1542053 (4th Cir. Apr. 25, 2011) (citing Marshall, *supra*, at 696–728). Not until *Bruen* was decided did the government change its position.

One circuit court and multiple district courts (including this Court) who have performed the type of rigorous historical analysis that *Bruen* requires have held that § 922(g)(1) is unconstitutional as applied. *See Range v. Attorney General United States of America*, 69 F.4th 96 (3d Cir. 2023) (prior felony conviction for state food stamp fraud); *United States v. Quailes*, Case No. 1:21-cr-0176, 2023 WL 5401733 (M.D. Penn. August 22, 2023) (four prior felony drug convictions "involving the possession with intent to distribute heroin and cocaine"); *United States v. Forbis*, Case No. 23-cr-133-GKF, 2023 WL 5971142 (N.D. Okla. August 17, 2023) (two prior felony convictions for possession of methamphetamine and one felony conviction for DUI); *Bullock*, 2023 WL 4232309 (prior felony convictions for manslaughter and aggravated assault). In each of those cases, the Government failed to meet its burden to establish the existence of a historical tradition of disarming felons.

Most of the decisions holding § 922(g)(1) unconstitutional as applied have relied on a finding that the defendant did not pose a danger to society at large. *See Range*, 69 F.4th at 112; *Quailes*, 2023 WL 5401733, *12-13; *Forbis*, 2023 WL 5971142, *6. Notably, both *Quailes* and

*Forbis* involved underlying drug convictions. In both cases, the district court concluded that a history of drug possession or drug use alone were insufficient to serve as historical analogues for dangerousness that justify a complete and permanent deprivation of Second Amendment rights. Mr. Brown falls squarely into that category.

Most recently, another district court held that the Government failed to meet its burden to establish that the felon in possession law imposed a comparable burden on Second Amendment rights. *See United States v. Prince*, No. 22-cr-240, 2023 WL 7220127 (N.D. Ill. November 2, 2023). There, the district court found that the historical analogues supported categorical disarmament of groups who posed a risk to society, like felons. *See id.* at *8. Those historical analogues, however, did not support *permanent* disarmament, leading the court to conclude that "§ 922(g)(1) imposes a far greater burden on the right to keep and bear arms than the historical categorical exclusions from the people's Second Amendment right." This holding comports with *Bruen*'s requirement that the Government prove the existence of comparable historical analogues with respect to "how" those regulations limited the Second Amendment *See Bruen*, 142 S.Ct. at 2133 (holding that "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *central* considerations when engaging in an analogical inquiry." (internal punctuation and citations omitted) (emphasis in original)).

## IV. Conclusion

Mr. Brown's possession of a firearm is presumptively protected by the Constitution, and the government cannot establish a historical tradition of completely and permanently stripping persons with felony convictions, like Mr. Brown, of their Second Amendment rights.

WHEREFORE, Mr. Brown respectfully requests that this Court grant his Partial Motion to Dismiss Indictment.

Respectfully submitted, this the 9th day of November, 2023.

**FELIX BROWN**
**Defendant**

BY: *<u>/s/ Michael L. Scott</u>*
Michael L. Scott, MB#101320
Senior Litigator
Southern District of Mississippi
200 S. Lamar St., Suite 200 North
Jackson, Mississippi 39201
Telephone: (601)948-4284
Facsimile: (601)948-5510
Email: mike_scott@fd.org

Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I, Michael L. Scott, certify that on November 9th, 2023, this Motion was filed with the Clerk of the United States District Court for the Southern District of Mississippi, using the electronic case filing system, which in turn sent an electronic copy of this Motion to all attorneys of record in this case.

<u>/s/ *Michael L. Scott*</u>
Attorney for Defendant